UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

```
----------------------------- X  Docket#
UNITED STATES OF AMERICA,     : 15-cr-348(ERK)(VMS)
                              :
        - versus -            : U.S. Courthouse
                              : Brooklyn, NY
RENDON-REYES,                 :
              Defendant       : April 20, 2017
-----------------------------X
```

TRANSCRIPT OF CRIMINAL CAUSE FOR PLEADING
BEFORE THE HONORABLE VERA M. SCANLON
UNITED STATES MAGISTRATE JUDGE

**A   P   P   E   A   R   A   N   C   E   S:**


**For the Government:**          **Bridget M. Rohde, Esq.**
                                 United States Attorney

                          **BY:  Margaret Elizabeth Lee, Esq.**
                                 **Taryn Merkl, Esq.**
                                 Assistant U.S. Attorneys
                                 271 Cadman Plaza East
                                 Brooklyn, NY 11201


**For the Defendant:**           **Lloyd Epstein, Esq.**
                                 Epstein & Weil
                                 225 Broadway
                                 Suite 1203
                                 New York, NY 10007


**Transcription Service:**       **Transcriptions Plus II, Inc.**
                                 61 Beatrice Avenue
                                 West Islip, NY 11795
                                 rl.transcriptions2@gmail.com

                          **BY:**  Theresa Roof


Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

2

Proceedings

1          THE CLERK:  Criminal Cause for hearing, docket:
2   15-cr-348 United States of America v Rendon-Reyes.
3          Spanish Interpreter, Rosa Olivera, previously
4   sworn.
5          Counsel, can you state your name for the
6   record.
7          MS. MERKL:  Taryn Merkl and Maggie Lee, for the
8   United States.  Good afternoon, your Honor.
9          THE COURT:  Good afternoon.
10          MR. EPSTEIN:  Lloyd Epstein, for Mr. Rendon-
11   Reyes.  Good afternoon, your Honor.
12          THE COURT:  Good afternoon.
13          That's your client sitting next to you, is that
14   right?
15          MR. EPSTEIN:  Yes, he is.
16          THE COURT:  All right.  So we're here for a
17   change of plea.  So, Mr. Rendon-Reyes, my name's Vera
18   Scanlon.  I'm a magistrate judge here.  So first I'm
19   going to start with some questions for the government and
20   then come back to you.
21          So first, are there any victims of the offense
22   and if so has the government fulfilled its obligation to
23   notify them of the today's hearing and their right to
24   attend and be heard?
25          MS. MERKL:  Yes, your Honor.  The government

3

Proceedings

1    has made such notifications.  The victims in this case

2    anticipate participating at the time of sentencing as to

3    certain of the defendants, but did not choose to

4    participate in the plea proceedings.

5            THE COURT:  Okay.  All right.

6            Mr. Rendon-Reyes, I'm going to ask my deputy,

7    Ms. Quinlan, to administer an oath to you.

8    S A U L   R E N D O N - R E Y E S, called as a witness,

9    having been first duly sworn testifies as follows:

10            THE COURT:  All right.  First, I want to make

11   sure that we all have the same paper.  I have a copy of

12   the superseding indictment in this case, a copy of the

13   plea agreement, which has been marked as number 7,

14   Government's Exhibit 7.  We're also attaching to that

15   copy a copy of a signature page from the certified court

16   interpreter; we'll go over that in some more detail.  I

17   have a copy of a consent to proceed before me today,

18   which we'll review in a minute and I also have a copy of

19   the government statement of the statutes and essential

20   elements.

21            Does everybody have the same papers?

22            MR. EPSTEIN:  Yes, your Honor.

23            MS. MERKL:  Yes.

24            THE COURT:  Okay.  All right.  So, Mr. Rendon-

25   Reyes, as you may know, this case has been assigned to a

4

                    Proceedings

1   district judge, Judge Korman.  Judge Korman is the judge

2   who will make the ultimate decision as to whether to

3   accept your guilty plea and if he does to sentence you.

4   So you have the absolute right to have the district judge

5   listen to your plea without any prejudice to you.

6           Do you understand?

7           THE DEFENDANT:  Yes, your Honor.

8           THE COURT:  All right.  So we're preparing a

9   recording of today's proceeding.  And a transcript of

10  that recording will be prepared by a court reporter and

11  provided to the district judge.  Judge Korman will review

12  the transcript of today's proceeding in connection with

13  deciding whether to accept your plea and if he does, with

14  your sentence.

15          Do you wish to give up your right to have Judge

16  Korman listen to your plea and instead proceed here

17  before me today?

18          So there's -- let me explain.  There's two

19  different kinds of judges --

20          THE DEFENDANT:  Could it be he or --

21          THE COURT:  Yes.  You have a choice, you could

22  do it before the district judge, Judge Korman, or you

23  could do it before me.

24          MR. EPSTEIN:  Your Honor, explain to my client

25  that Judge Korman will still be the sentencing judge.

Proceedings

1   That the waiver is limited to the entry of the plea.

2          THE COURT:  Okay.  So you have options.  You

3   can wait and have Judge Korman hear your plea or you can

4   do it here before me today, and then Judge Korman will

5   read the transcript of today's proceeding and then Judge

6   Korman will decide if he accepts your plea or rejects the

7   plea.  And if he accepts your plea, he'll decide what

8   your sentence is.  So it's totally up to you.

9          THE DEFENDANT:  Well, then you take it, yes.

10  You go ahead and take it.

11         THE COURT:  Okay.  So in connection with your

12  waiver of your right to have Judge Korman listen to your

13  plea and instead proceed before me, I have this form.

14  I'm going to hold up my copy.  It's a consent form.

15         Was this read to you in Spanish?

16         THE DEFENDANT:  Yes.

17         THE COURT:  All right.  And do you understand

18  what it says?

19         THE DEFENDANT:  Yes.

20         THE COURT:  And did you have enough time to

21  talk to your lawyer about it?

22         THE DEFENDANT:  Yes.

23         THE COURT:  Okay.  All right.  On this form are

24  some signatures, I'm going to ask you about the first

25  one; is that your signature?  I'm holding up my copy.

6

                        Proceedings

1               MR. EPSTEIN:  Your Honor, it's hard to tell --

2               THE COURT:  Here, we're going to pass it over

3    to you.

4               So the first question is, the first signature,

5    the one closest to the top, is that Mr. Rendon-Reyes

6    signature?

7               THE DEFENDANT:  This one here, yes.

8               THE COURT:  Okay.  So you have to tell me, is

9    it the first one, the top signature?

10              THE DEFENDANT:  Yes, the first.

11              THE COURT:  Okay.  And then Mr. Epstein, is

12   your signature right below?

13              MR. EPSTEIN:  Yes.

14              THE COURT:  And then for the government, is --

15   I'm not sure if it's Ms. Lee or Ms. Merkl, I didn't look.

16              MS. MERKL:  It's my signature, your Honor.

17   Ms. Merkl.

18              THE COURT:  All right.  Thanks.

19              All right.  Mr. Rendon-Reyes, do you give your

20   consent to proceed before me as to your plea, instead of

21   before Judge Korman, voluntarily and of your own free

22   will?

23              THE DEFENDANT:  Yes, your Honor.

24              THE COURT:  Has anyone made any threats or

25   promises to you to get you to proceed here before me

7

                              Proceedings
1  today?

2             THE DEFENDANT:  No.

3             THE COURT:  All right.  As we go through

4  today's process, I'm going to have to ask you a number

5  of questions in order to assure myself and,

6   in turn, Judge Korman, that your plea is, in fact, a

7  valid plea.  So as we go along, if you don't understand

8  what I say or my questions, you can either speak to your

9  lawyer about that or ask me and I'll try to clarify what

10 I said.

11            So do you understand that you have the right to

12 be represented by an attorney at trial and at every other

13 stage of these criminal proceedings, including this one?

14            THE DEFENDANT:  Yes.

15            THE COURT:  Do you understand that if you can't

16 afford a lawyer the court may appoint one for you?

17            THE DEFENDANT:  Yes, ma'am.

18            THE COURT:  Mr. Epstein, are you appointed

19 counsel?

20            MR. EPSTEIN:  Yes.

21            THE COURT:  So, Mr. Rendon-Reyes, if at any

22 point you would like to speak with Mr. Epstein, please

23 let me know and I'll let you do so.  Do you understand?

24            THE DEFENDANT:  Yes, ma'am.

25            THE COURT:  All right.  I'm going to remind you

8

Proceedings

1    that you took an oath to tell the truth.  So this means

2    for you, if at any time you answer my questions falsely,

3    your answers may later be used against you in a separate

4    prosecution for the crime of perjury or of making a false

5    statement.  Do you understand?

6              THE DEFENDANT:  Yes, ma'am.

7              THE COURT:  We're going to start with some

8    background questions.

9              What is your full name?

10             THE DEFENDANT:  Saul Rendon-Reyes.

11             THE COURT:  And how old are you?

12             THE DEFENDANT:  Thirty-eight.

13             THE COURT:  What's the highest level of

14   education that you have completed in school?

15             THE DEFENDANT:  First grade in elementary

16   school.

17             THE COURT:  So how old were you when you

18   finished school?

19             THE DEFENDANT:  About six or seven years old.

20             THE COURT:  And since you were six or seven

21   years old, have you had any formal education?

22             THE DEFENDANT:  No.

23             THE COURT:  And where did you go to school?

24             THE DEFENDANT:  In the Benito Juarez School, in

25   the state of Tlaxcala.

9

                        Proceedings

1              THE COURT:  That's in Mexico?

2              THE DEFENDANT:  Yes.

3              THE COURT:  All right.  A different kind of

4    question.

5              Are you presently or have you recently been

6    under the care of a doctor?

7              THE DEFENDANT:  No.

8              THE COURT:  Are you presently or have you

9    recently been under the care of any mental health

10   professional, such as a psychiatrist, psychologist or

11   social worker?

12             THE DEFENDANT:  No.

13             THE COURT:  Have you been hospitalized or

14   treated for any mental illness?

15             THE DEFENDANT:  No, your Honor.

16             THE COURT:  Have you ever been hospitalized or

17   treated for an addiction to drugs or alcohol?

18             THE DEFENDANT:  No.

19             THE COURT:  In the past 24 hours have you

20   consumed any narcotics?

21             THE DEFENDANT:  No.

22             THE COURT:  In the past 24 hours have you

23   consumed any alcohol?

24             THE DEFENDANT:  No.

25             THE COURT:  In the past 24 hours have you taken

10

Proceedings

1   any medications?

2           THE DEFENDANT:  Aspirin.

3           THE COURT:  All right.  And when did you take

4   that?

5           THE DEFENDANT:  That was the day before

6   yesterday, in the evening.

7           THE COURT:  Okay.  And since you took that

8   aspirin, have you taken any more medications?

9           THE DEFENDANT:  No.

10          THE COURT:  Okay.  Is your mind clear as you

11  sit here today?

12          THE DEFENDANT:  Yes.

13          THE COURT:  Do you understand these

14  proceedings?

15          THE DEFENDANT:  Yes, your Honor.

16          THE COURT:  Okay.

17          I'm going to ask your lawyer some questions.

18          Mr. Epstein, have you discussed this matter

19  with your client?

20          MR. EPSTEIN:  Yes.

21          THE COURT:  And have you had any difficulty

22  communicating with your client?

23          MR. EPSTEIN:  No.

24          THE COURT:  And when you've spoken with your

25  client, have you used the assistance of a Spanish

Proceedings

1    language interpreter?

2              MR. EPSTEIN:  Most of the time, yes.

3              THE COURT:  All right.  Do you speak Spanish?

4              MR. EPSTEIN:  Some, yes.

5              THE COURT:  Okay.  All right.

6              Was there any language barrier at any of your

7    communications or attempts at communication with your

8    client?

9              MR. EPSTEIN:  No, your Honor.  In the critical

10   proceedings in which we discussed the plea, the plea

11   agreement, the indictment and his participation in that,

12   I always made sure to review everything in Spanish with

13   an interpreter.

14             THE COURT:  All right.  In your opinion, is

15   Mr. Rendon-Reyes capable of understanding the nature of

16   these proceedings?

17             MR. EPSTEIN:  Yes.

18             THE COURT:  In your opinion, does he

19   understand the rights he'll be waiving if he goes ahead

20   with his guilty plea?

21             MR. EPSTEIN:  Yes.

22             THE COURT:  Do you have any doubt as to Mr.

23   Rendon-Reyes competence to plead at this time?

24             MR. EPSTEIN:  No.

25             THE COURT:  Have you advised him of the

12

Proceedings

1    possible sentencing consequences?

2              MR. EPSTEIN:  Yes.

3              THE COURT:  And have you specifically discussed

4    with him the mandatory minimum?

5              MR. EPSTEIN:  Yes.

6              THE COURT:  And have you discussed with him the

7    sentencing guidelines?

8              MR. EPSTEIN:  Yes.

9              THE COURT:  And do you believe he understands

10   -- understood what you were telling him?

11             MR. EPSTEIN:  Yes.

12             THE COURT:  All right.  Mr. Rendon-Reyes, have

13   you had a sufficient opportunity to discuss this case

14   with your attorney?

15             THE DEFENDANT:  Yes.

16             THE COURT:  And have you had the assistance of

17   a Spanish language interpreter in most of your

18   discussions with your attorney?

19             THE DEFENDANT:  Yes, your Honor.

20             THE COURT:  And have you had any language

21   difficulties communicating with your attorney?

22             THE DEFENDANT:  No.

23             THE COURT:  Are you fully satisfied with the

24   representation and legal advice given to you in your case

25   by your attorney?

13

Proceedings

1        THE DEFENDANT:  Yes.

2        THE COURT:  All right.  Did you receive a copy

3  of the document called the "superseding indictment?"  I'm

4  going to hold up my copy.  This thick document.

5        THE DEFENDANT:  Yes.

6        THE COURT:  Okay.  Was it translated for you

7  from English to Spanish?

8        THE DEFENDANT:  Frankly, no.

9        MR. EPSTEIN:  We summarized it for him, your

10  Honor.  We summarized the relevant counts.

11        THE COURT:  Okay, when he says --

12        MR. EPSTEIN:  The interpreter summarized the

13  relevant counts.  They didn't read every -- he's -- he's

14  not charged in every count, your Honor.

15        THE COURT:  Okay, so with regard to any of the

16  aspects of the superseding indictment that apply to Mr.

17  Rendon-Reyes, were those translated?

18        MR. EPSTEIN:  Yes.

19        THE COURT:  Okay.  All right.

20        So, Mr. Rendon-Reyes, was -- were the counts

21  that relate to you in the superseding indictment

22  translated for you from English to Spanish?

23        THE DEFENDANT:  Spoken, yes.

24        THE COURT:  Spoken, yes.

25        It's not whether you received a written copy

14

Proceedings

1 but whether it was read to you in Spanish.

2          THE DEFENDANT:  Oh, yes.

3          MR. EPSTEIN:  I think that's where the

4 misunderstanding is, your Honor.  I think my client

5 understood translation as a written translation.

6 Interpretation he understood as an oral.

7          THE COURT:  All right.  So, Mr. Rendon-Reyes,

8 were the counts that relate to you in the superseding

9 indictment read to you in Spanish?

10          THE DEFENDANT:  Yes.

11          THE COURT:  All right.  And specifically, were

12 Counts 1 and 9 of the indictment read to you in Spanish?

13          THE DEFENDANT:  Yes.

14          THE COURT:  And were the racketeering acts that

15 relate to you, particularly Racketeering Act 4(a) in

16 Count 9, and Racketeering Act in 9(a) in Count 19 read to

17 you in Spanish?

18          THE DEFENDANT:  Yes.

19          THE COURT:  Okay.  All right.

20          Did you review Counts 1 and 9 with your

21 attorney?

22          THE DEFENDANT:  Yes.

23          THE COURT:  All right.  And did you review

24 those racketeering acts, 4(a) and 9(a) with your

25 attorney?

15

Proceedings

1          THE DEFENDANT:  Yes.

2          MR. EPSTEIN:  I was present when the

3    interpreter interpreted the documents.

4          THE COURT:  Okay.  All right.

5          So I'm trying to ask a slightly different

6    question, which is, Mr. Rendon-Reyes, did you have an

7    opportunity to discuss these particular counts in the

8    indictment, 1, 9 and 19, as well as Racketeering Acts

9    4(a) and 9(a) with your attorney?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Okay.  All right.

12          Now counsel, do you want me to read the

13    indictment or the particular counts to your client?

14          MR. EPSTEIN:  No.

15          THE DEFENDANT:  No.

16          THE COURT:  Okay.  All right.

17          Now we're going to switch gears, Mr. Rendon-

18    Reyes, and I'm going to tell you a bit about your rights

19    in this criminal proceeding.

20          So the first and most important thing you

21    should understand is that you don't have to plead guilty,

22    even if you are guilty.  Under the American legal system,

23    the prosecution or the government has the burden of

24    proving a defendant's guilt beyond a reasonable doubt.

25    And if the government failed in that and cannot or do not

Proceedings

1    meet this burden of proof, the jury, at a trial, have the

2    duty to find the defendant not guilty, even if the

3    defendant is guilty.  Do you understand?

4              THE DEFENDANT:  Yes.

5              THE COURT:  So for you, you have a choice.

6    It's up to you to decide what to do in your case.  No one

7    else's choice but yours.  You can withdraw your

8    previously entered plea of not guilty, and plead guilty,

9    as I'm told you wish to do, or you could go to trial

10   simply by persisting in your plea of not guilty.

11             Do you understand?

12             THE DEFENDANT: Yes.

13             THE COURT:  So you should know that it has

14   sometimes happened in American courtrooms, including in

15   this courthouse, that a jury has returned a verdict of

16   not guilty, although everyone else in the courtroom

17   believed the defendant to be guilty.  What the jury was

18   saying in that case, was not that the defendant wasn't

19   guilty, but rather the government or the prosecution had

20   failed to meet its burden of proving the defendant's

21   guilt beyond a reasonable doubt.  Do you understand that?

22             THE DEFENDANT:  Yes, I understand.

23             THE COURT:  So it's up to you, even if you are

24   guilty, you have a choice.  You can exercise your right

25   in that regard by saying "not guilty" when I ask you how

17

                        Proceedings

1    you plead.  If you continue to plead not guilty, under

2    the Constitution and Laws of the United States of

3    America, you are entitled to a speedy and public trial by

4    a jury, with the assistance of a lawyer, on the charges

5    contained in the indictment, which has been filed with

6    the court.  The indictment is that document that we just

7    discussed earlier that sets forth the government's

8    charges against you and your co-defendants.  Do you

9    understand?

10            THE DEFENDANT:  Yes, I understand.

11            THE COURT:  At your trial, you would be

12   presumed innocent, you would not have to prove your

13   innocence; it would be the government's burden to

14   overcome the presumption of innocence and prove you

15   guilty by competent evidence and beyond a reasonable

16   doubt.  If the government failed to carry its burden, the

17   jury would have the obligation and the duty to find you

18   not guilty.  Do you understand?

19            THE DEFENDANT:  Yes, I understand.

20            THE COURT:  By pleading guilty you're giving up

21   the right to have the government satisfy its burden of

22   proving you guilty beyond a reasonable doubt.  Instead,

23   you are admitting your guilt.  Do you understand that?

24            THE DEFENDANT:  Yes, ma'am.

25            THE COURT:  Were you to go to trial in your

18

Proceedings

1   case, the government -- sorry, witnesses for the

2   government would have to come to court and testify in

3   your presence.  Your lawyer would have the right to

4   cross-examine the witnesses for the government, to object

5   to the evidence offered by the government, and to offer

6   witnesses and other evidence on your behalf.  Do you

7   understand?

8           THE DEFENDANT:  Yes, your Honor.

9           THE COURT:  Your attorney would also have the

10  right to subpoena or to compel witnesses to come to court

11  and testify.  Do you understand that?

12          THE DEFENDANT:  Yes, I understand.

13          THE COURT:  If you plead guilty, and I

14  recommend that the district judge accept your plea and

15  that's what he does, you are giving up these rights.  You

16  are giving up your right to confront the witnesses who'd

17  testify against you, you're giving up your right to offer

18  evidence on your own behalf, to compel witnesses to come

19  to court and testify, and to raise any defenses that you

20  might have in this case.  Do you understand?

21          THE DEFENDANT:  Yes, I understand.

22          THE COURT:  Were there to be a trial in your

23  case, you would have the right to testify on your own

24  behalf, if you chose to do so, but you could not be

25  required to testify.  Under the Constitution of the

19

Proceedings

1   United States, a defendant in a criminal case cannot be

2   forced to take the witness stand at his trial, and say

3   anything that could be used against him to show he's

4   guilty of the crime or crimes with which he is charged.

5   So if you decided that you didn't want to testify at your

6   own trial, the judge would instruct the jurors that they

7   couldn't hold that fact against you.  This is called

8   "your right against self-incrimination."  Do you

9   understand this right?

10           THE DEFENDANT:  Yes, your Honor.

11           THE COURT:  If you decide to plead guilty, you

12   are going to admit your guilt, and give up this right.

13   You give up your right against self-incrimination.

14            I'm going to have to ask you questions about

15   what you did in order to satisfy myself and in turn,

16   Judge Korman, that you are, in fact, guilty of the

17   charges to which you are pleading guilty.  You're going

18   to have to answer my questions truthfully and acknowledge

19   your guilt.  And I'll remind you that you're going to be

20   answering those questions subject to the oath to answer

21   my questions truthfully.  Do you understand that?

22           THE DEFENDANT:  Yes, your Honor.

23           THE COURT:  So it's not going to be enough for

24   you simply to say that you're guilty; you are going to

25   have to tell me what it is that you did, such, that you

20

Proceedings

1    are guilty of the particular charges to which you are

2    pleading guilty.

3            If you decide to go ahead with your guilty

4    plea, and I recommend to the district judge that he

5    accept your plea, and that's what he does, you are giving

6    up your constitutional right to a trial, and all of the

7    other rights I just discussed.  There will be no trial in

8    your case.  If the judge accepts your plea, he will

9    simply enter a judgement of guilty on the basis of your

10   guilty plea.  Do you understand?

11           THE DEFENDANT:  Yes, I understand.

12           THE COURT:  All right.  Usually, if after you

13   are sentenced, you or your attorney thinks the court has

14   not properly followed the law in sentencing you, you can

15   appeal your sentence to an appellate court or to a higher

16   court.  By pleading guilty, you will not, except under

17   very limited circumstances, be able to challenge the

18   judgement of conviction directly by appeal or indirectly

19   by a collateral attack.

20           All right.  I've described briefly your

21   appellate rights but I'm going to draw your attention to

22   your plea agreement, which is marked as Government

23   Exhibit 7, where there is a limitation on your appellate

24   rights.  I'm just looking for that provision.

25           In paragraph 4, on page 6 of the plea agreement

21

Proceedings

1   includes the following.  "The defendant," that's you,

2   "agrees not to file an appeal or otherwise challenge by

3   petition, pursuant to a particular federal statute called

4   28 United States Code, Section 2255 or any other

5   provision, the conviction or sentence in the event that

6   the court imposes a term of imprisonment of 235 months or

7   below."

8            Do you understand that limitation on your

9   appellate rights?

10           THE DEFENDANT:  The last part I didn't get, no.

11           THE COURT:  All right.  I'm going to ask your

12   lawyer to explain it and I'll go over it again.

13           All right.  So you've had an opportunity to

14   speak with your lawyer about this provision.  So what I

15   had described was your appellate rights in an usual

16   situation, which is, if you or your lawyer disagree with

17   your sentence, you can go to an appellate court.  A court

18   that reviews the decision of this court, and make those

19   arguments.  But in your case, in your agreement with the

20   government, you've agreed to limit those rights to

21   appeal.

22           I'm going to paraphrase it, but it's in

23   paragraph 4.  You agree that you're not going to appeal

24   or otherwise challenge your sentence or your conviction

25   if the judge sentences you to a term of imprisonment of

22

Proceedings

1  235 months or below.

2          So do you understand -- first, do you

3  understand your appellate rights in this regard?

4          THE DEFENDANT:  Yes.

5          THE COURT:  All right.  Do you understand the

6  limitation on those rights that you're agreeing to in the

7  plea agreement?

8          THE DEFENDANT:  Yes, your Honor.

9          THE COURT:  All right.  And did you have enough

10  time to talk to your lawyer about that limitation?

11          THE DEFENDANT:  Yes.

12          THE COURT:  All right.

13          So are you willing to give up your right to a

14  trial and all of the other rights that I've just

15  discussed?

16          THE DEFENDANT:  Yes, your Honor.

17          THE COURT:  All right.  Now we're going to talk

18  about the plea agreement in some more detail.

19          Let me ask counsel, were all formal plea offers

20  by the government conveyed to Mr. Rendon-Reyes?

21          MR. EPSTEIN:  Yes.

22          THE COURT:  So as I said earlier, the plea

23  agreement is marked as Government Exhibit 7; on the last

24  page, page 12, in the middle of the page, it says, "I

25  have read the entire agreement and discussed it with my

Proceedings

1    attorney.  I understand all of it's terms and I'm

2    entering into it knowingly and voluntarily."

3              So, Mr. Rendon-Reyes, is that a true statement?

4              THE DEFENDANT:  Yes, your Honor.

5              THE COURT:  All right.  I'm going to hold up my

6    copy of the plea agreement and point to the signature

7    right below the paragraph that I just read.  Can you see

8    it from where you are?

9              No?  All right.  Ms. Quinlan, can you show him.

10             So the first question's going to be when Ms.

11   Quinlan brings it over to you is, right below the

12   paragraph that I read and right above where it says Saul

13   Rendon-Reyes, is that your signature, Mr. Rendon-Reyes?

14             THE DEFENDANT:  Yes, your Honor.

15             THE COURT:  Okay.  And then counsel, is that

16   your signature right below?

17             MR. EPSTEIN:  Yes.

18             THE COURT:  And then actually we didn't bring

19   it over here.  Sorry, that's my fault.  I didn't --

20   there's the last page which just has, what I believe is

21   the translator's signature, but counsel, can you confirm

22   that that's the translator's signature?

23             MR. EPSTEIN:  Yes.

24             THE COURT:  Okay.  All right.  And then for the

25   government, there's two signatures there, can you just --

Transcriptions Plus II, Inc.

24

Proceedings

1          MS. MERKL:  Yes, your Honor.  Margaret Lee

2  signed above her name and I, Taryn Merkl signed above my

3  name.  Thank you.

4          THE COURT:  All right.  Thank you.

5          All right.  So, Mr. Rendon-Reyes, was this

6  agreement, which is now marked as Government Exhibit 7,

7  was it translated for you from English to Spanish?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Okay.  And did you review your plea

10  agreement with your attorney?

11          THE DEFENDANT:  Yes.

12          THE COURT:  Okay.  And in doing so, did you

13  have the assistance of a Spanish language interpreter?

14          THE DEFENDANT:  Yes, your Honor.

15          THE COURT:  Do you understand all of terms of

16  the plea agreement?

17          THE DEFENDANT:  Yes, your Honor.

18          THE COURT:  Does the plea agreement,

19  Government's Exhibit 7, accurately represent the entire

20  understanding or agreement that you have come to with the

21  government?

22          THE DEFENDANT:  Yes, your Honor.

23          THE COURT:  Has anyone made any promise or

24  assurance to you that's not included in this plea

25  agreement, Government Exhibit 7, to persuade you to

25

Proceedings

1  accept it?

2           THE DEFENDANT:  No.

3           THE COURT:  Has anyone threatened you in any

4  way to persuade you to accept the plea agreement?

5           THE DEFENDANT:  No, your Honor.

6           THE COURT:  All right.

7           Counsel, did you read and review with your

8  client the written plea agreement before the court which

9  is Government Exhibit 7?

10          MR. EPSTEIN:  Yes.

11          THE COURT:  And in doing so did you have the

12 assistance of a Spanish language interpreter?

13          MR. EPSTEIN:  Yes.

14          THE COURT:  And does Government Exhibit 7

15 reflect your understanding of the entire agreement that

16 your client has entered into with the government?

17          MR. EPSTEIN:  Yes.

18          THE COURT:  Okay.  All right.

19          Mr. Rendon-Reyes, do you understand that if you

20 fail to comply with your agreement with the government,

21 the government will be released from its obligations, but

22 you will not be released from your guilty plea?

23          THE DEFENDANT:  Yes, your Honor.

24          THE COURT:  Okay.

25          All right.  We're going to go over the

26

Proceedings

1  sentencing scheme applicable in your case.  This is

2  outlined in paragraph 1 of the plea agreement.

3          So what's being proposed is that you're going

4  to plead guilty to Counts 1 and 9 of the superseding

5  indictment, and that at the plea, when we get to that

6  stage of today's proceeding, you're going to admit to

7  certain racketeering acts, racketeering act 4(a) and

8  Count 9 as to Jane Doe Number 2, and sex trafficking of

9  Jane Doe Number 7, which is alleged in Racketeering Act

10  9(a) and Count 19 of the superseding indictment.  These

11  counts carry the following statutory penalties.

12          For Count 1, the maximum term of imprisonment

13  is life, the minimum term of imprisonment is zero years.

14  There's something called supervised release, which is, if

15  and when you're released from prison, you could be

16  subject to supervised release by the probation

17  department.

18          On supervised release, there may be many

19  restrictions placed on your liberty, including travel

20  limitations, and requirements that you report to a

21  probation officer.

22          As to Count 1, the maximum supervised release

23  term is five years, it would come after any term of

24  imprisonment.  If you violated a condition of supervised

25  release, you could then be sentenced for up to five years

27

Proceedings

1   and you would not receive credit for pre-release

2   imprisonment or time previously served on post-release

3   supervision.  Do you understand that?

4           THE DEFENDANT:  Yes, your Honor.

5           THE COURT:  The maximum fine in your case is

6   the greater of $250,000 or twice the gross gain or twice

7   the gross loss.  Do you understand that?

8           THE DEFENDANT:  Yes, your Honor.

9           THE COURT:  Restitution is mandatory in the

10  full amount of each victim's losses as determined by the

11  court.  And you have to be charged $100 special

12  assessment.  Do you understand those provisions?

13          THE DEFENDANT:  Yes, your Honor.

14          THE COURT:  All right.  Let me ask the

15  government.

16          Was Mr. Rendon-Reyes extradited to the United

17  States?

18          MS. MERKL:  No Judge, he was arrested in the

19  United States.

20          THE COURT:  Okay.

21          All right.  So other possible statutory

22  penalties for Count 1 include the following.

23          Your removal from the United States.  So this

24  is a provision that includes significant immigration

25  consequences.  These are outlined in paragraph 8 of the

28

Proceedings

1   plea agreement.  I'm going to look at paragraph 8 and go

2   over it.

3         All right.  So pleading guilty to the proposed

4   counts may have serious immigration consequences as to

5   your immigration status in the United States, if you are

6   not a United States citizen.  Under federal law, many

7   crimes are what are called "removable offenses,"

8   including those to which is proposed that you are going

9   to plead guilty.

10        In fact, the racketeering involving sex

11  trafficking and interstate prostitution which are counts

12  to which it's proposed you're going to plead guilty, your

13  removal from the United States is presumptively

14  mandatory.  Removal and other immigration consequences

15  are the subject of a separate proceeding, not a

16  proceeding in this court.  So no one here, not the

17  government's lawyers, not your lawyer, not the court can

18  tell you with certainty the effect of your conviction on

19  your immigration status in the United States.

20        And it's possible that any immigration

21  consequences would become effective after you've served a

22  term of imprisonment in the United States.

23        Paragraph 8 says "that you nevertheless affirm

24  that you want to go ahead with your guilty plea

25  regardless of any immigration consequences that may

29

Proceedings

1    result from your plea, even if the consequence is your

2    automatic removal from the United States."

3            So is that last statement correct, that you'd

4    like to go ahead with your plea, despite the immigration

5    consequences that are likely to arise because of your

6    guilty plea?

7            THE DEFENDANT:  Yes, your Honor.

8            THE COURT:  All right.  Other possible

9    sentencing consequences include, sex offender

10   registration, pursuant to the "Sex Offender Registration

11   Notification Act," which is included in a particular

12   federal statute or set of statutes, 42 United States Code

13   Section 16901 and the sections following thereafter.

14           That's described in paragraph 11 of your plea

15   agreement.   Did -- was paragraph 11 translated for you

16   from English to Spanish?

17           MR. EPSTEIN:  Yes, we translated the entire

18   agreement.

19           THE COURT:  Okay.  So this is -- was the

20   paragraph, Mr. Rendon-Reyes, was the paragraph about sex

21   offender registration and notification act translated for

22   you from English to Spanish?

23           THE DEFENDANT:  Yes.

24           THE COURT:  All right.  Do you understand this

25   provision of your plea agreement?

30

Proceedings

1           THE DEFENDANT:  Yes, your Honor.

2           THE COURT:  And did you have a sufficient

3    opportunity to review it with your attorney?

4           THE DEFENDANT:  Yes, your Honor.

5           THE COURT:  Another possible sentencing is

6    criminal forfeiture which is described in paragraph 6 and

7    7 of your plea agreement.

8           All right.  Did you review paragraphs 6 and 7

9    with your attorney?

10           THE DEFENDANT:  Yes, your Honor.

11           THE COURT:  All right.  And were those

12    paragraphs translated for you from English to Spanish?

13           THE DEFENDANT:  Yes.

14           THE COURT:  And do you understand those

15    paragraphs?

16           THE DEFENDANT:  Yes, your Honor.

17           THE COURT:  All right.  I'm just going to note,

18    paragraph 6 includes a handwritten amendment which says,

19    "the defendant represents that he will disclose all of

20    his assets within 30 days to the United States on a

21    financial statement entitled, Department of Justice

22    Financial Statement, hereinafter the "financial

23    statement," a copy of which will be attached hereto as

24    Exhibit A."

25           So I read it with the amendments.  I'm holding

31

Proceedings

1   up my copy, if you can see it from there, or can you see

2   it from where you're sitting?

3            THE DEFENDANT:  No, it's okay.  It's all right.

4            THE COURT:  Are those your initials?

5            THE DEFENDANT:  Yes, your Honor

6            THE COURT:  Counsel, did you initial and for

7   the government, Ms. Lee?

8            MS. LEE:  I did your Honor.

9            THE COURT:  Okay.

10           All right.  So, Mr. Rendon-Reyes, do you

11  understand the possible sentencing consequences of Count

12  1?

13           THE DEFENDANT:  Yes, your Honor.

14           THE COURT:  All right.  Do you understand that

15  parole has been abolished in the federal system?  So that

16  if you are sentenced to a prison term, you will not be

17  released on parole, and you'll be required to spend the

18  entire period of that term in prison?

19           THE DEFENDANT:  Yes, your Honor.

20           THE COURT:  Okay.

21           All right.  Also outlined in the first

22  paragraph of your plea agreement are the possible

23  sentencing consequences of Count 9.  The maximum term

24  imprisonment of -- for Count 9 is life.  And the minimum

25  term of imprisonment is 15 years.  Do you understand

32

Proceedings

1    those provisions?

2              THE DEFENDANT:  Yes, your Honor.

3              THE COURT:  All right.

4              So you understand the judge has to sentence you

5    to at least 15 years?  Do you understand that?

6              THE DEFENDANT:  Yes, your Honor.

7              THE COURT:  All right.  Did you have a

8    sufficient opportunity to review that provision with your

9    attorney?

10             THE DEFENDANT:  Yes, your Honor.

11             THE COURT:  All right.  Additional possible

12   sentencing consequences on Count 9 include the following.

13   A minimum supervised release term of five years.  A

14   maximum supervised release term of life, which would

15   follow any term of imprisonment.  If a condition of

16   supervised release is violated, you may be sentenced for

17   up to life without credit for pre-release imprisonment or

18   time previously served on post-released supervision.

19   Additionally, if you commit any criminal offense, under

20   particular federal law, which are Chapter 109(a), 110 or

21   117, or 18 United States Code, Sections 1201 or 1591 for

22   which the -- for which a term longer than one year can be

23   imposed.  You shall be sentenced to not less than five

24   years and up to the maximum term of imprisonment for the

25   offense which is set forth in paragraph 1(a), which is

33

Proceedings

1   life imprisonment.

2              All right.  So do you understand the supervised

3   release provision?

4              THE DEFENDANT:  Yes, your Honor.

5              THE COURT:  Additionally, the maximum fine of

6   greater than $250,000 or twice the gross gain or twice

7   the gross loss can be imposed.  Do you understand that?

8              THE DEFENDANT:  Yes, your Honor.

9              THE COURT:  Restitution is mandatory in the

10  full amount of each victim's losses as determined by the

11  court.  And you have to be charged $100 special

12  assessment.  Do you understand that?

13             THE DEFENDANT:  Yes, your Honor.

14             THE COURT:  Other penalties include, removal

15  from the United States, which is described in paragraph 8

16  and which I just went over.  Do you understand the

17  removal possibility?

18             THE DEFENDANT:  Yes, your Honor.

19             THE COURT:  Do you understand because of the

20  offenses to which it's proposed that you're going to

21  plead guilty, that your removal from the United States is

22  presumptively mandatory?

23             THE DEFENDANT:  Yes, your Honor.

24             THE COURT:  All right.  Additional possible

25  sentencing consequences also include sex offender

34

Proceedings

1   registration, which is also, as I said earlier described

2   in paragraph 11.  Do you understand the sex offender and

3   notification provisions of your plea agreement?

4          THE DEFENDANT:  Yes, your Honor.

5          THE COURT:  And there's a criminal forfeiture

6   provision which is described in paragraph 6 and 7.  We

7   went over those earlier.  Do you understand the criminal

8   forfeiture provision?

9          THE DEFENDANT:  Yes, your Honor.

10          THE COURT:  Okay.  All right.  So did you have

11  a sufficient opportunity to review with your attorney the

12  possible sentencing consequences with regard to Count 1

13  and Count 9 of the superseding indictment?

14          THE DEFENDANT:  Yes, your Honor.

15          THE COURT:  And I ask you this again but I want

16  to make sure, do you understand that Count 9 carries a

17  minimum term of imprisonment of 15 years?

18          THE DEFENDANT:  Yes, your Honor.

19          THE COURT:  All right.  Additionally, the

20  sentence imposed on each count may run consecutively, or

21  one after the other.  Do you understand that?

22          THE DEFENDANT:  Yes, your Honor.

23          THE COURT:   All right.  Let me tell you a

24  little bit about the sentencing process.

25          The sentencing judge, who in your case is going

Proceedings

1    to be Judge Korman, does not have complete discretion to

2    impose a sentence outside of the statutory minimum and

3    maximum sentences that are set forth in the statute.  Do

4    you understand?

5                THE DEFENDANT:  Yes, your Honor.

6                THE COURT:  As a first step in a sentencing

7    process, the judge has to consider the advisory

8    sentencing guidelines, which have been issued by the

9    United States Sentencing Commission to help the judge

10   decide what's a reasonable sentence in your case.  As a

11   second step, the judge must consider whether there are

12   any factors present that would allow the judge to depart

13   from these advisory sentencing guidelines.  The judge can

14   depart upwardly or downwardly.  Additionally, the judge

15   has to consider factors that are set forth in a

16   particular federal statute, 18 United States Code,

17   Section 3553a, against all the facts and circumstances of

18   your case.  It might be that the judge decides to impose

19   a non-guideline sentence.

20       The bottom line for you is, until the date of

21   sentencing, when the judge has read the transcript of

22   today's proceeding and gets a pre-sentence report about

23   you and hears from you, your lawyer, and the government's

24   lawyers, you cannot know with certainty what sentencing

25   guidelines will be for your case or whether there will be

36

Proceedings

1   grounds to depart from them or whether the judge will

2   impose what's called a "non-guideline sentence."

3           All right.  And I also want to make clear, even

4   though we're talking about the sentencing guidelines so

5   far, and I'm going to ask the lawyers to talk a little

6   more about it, the second count to which it's proposed

7   you're going to plead guilty, Count 9, includes that

8   mandatory minimum provision of 15 years.  Do you

9   understand?

10          THE DEFENDANT:  Yes, your Honor.

11          THE COURT:  All right.  Despite the fact that

12  the lawyers may not have the right estimate for various

13  reasons, they could make a mistake or the facts might be

14  different than what they know or the facts might change

15  between now and the time of sentence, I'm going to ask

16  them what they believe the sentencing guidelines are

17  likely to be in your case based on the facts available to

18  them now.

19          So let me start with Ms. Lee on behalf of the

20  government.  And I should say, these are outlines,

21  correct, in paragraph 2 of the plea agreement, right?

22          MS. LEE:  That's correct, your Honor.

23          As outlined in the plea agreement, the

24  government estimates a total offense level of 38, with a

25  3 point reduction for acceptance of responsibility.  The

37

Proceedings

1   adjusted offense level will be a 35, which carries a
2   range of imprisonment of 168 to 210 months, assuming that
3   the defendant falls within a criminal history Category 1.
4   In light of the 15 year mandatory minimum, the effective
5   guidelines range would be 180 to 210 months.  And I just
6   also note for the record, that this calculation
7   incorporates a 2 point reduction for a global disposition
8   which is contingent on all of the defendants that are set
9   forth in the plea agreement, pleading guilty by today,
10  April 20th.  As the court is aware, we have one more
11  scheduled today, and one got adjourned until tomorrow.
12  Assuming that that plea goes forward tomorrow, April
13  21st, it's the government's position that that is
14  consistent with the agreement, even though it's one day
15  after the date set forth in the agreement.
16          THE COURT:  Okay.  All right, Mr. Rendon-Reyes,
17  do you understand what the government's lawyer just said?
18          THE DEFENDANT:  Yes, your Honor.
19          THE COURT:  All right.  And I know I keep going
20  back to this point but it's a very important point.
21          Even though the sentencing guidelines
22  calculation that the government provided has a range of
23  168 to 210 months, because of the mandatory minimum, the
24  effective guideline range has to start at 180 months.  Do
25  you understand that?

38

Proceedings

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  All right.  Let me ask counsel,

3   what's your view of what the sentencing guidelines are

4   likely to be in this case?

5          MR. EPSTEIN:  Same as the government's, your

6   Honor.  It's what's incorporated in the plea agreement,

7   you know, it -- the calculations are 168 to 210 months,

8   given the mandatory minimum, the effective guidelines are

9   180 to 210 months, assuming that Mr. Rendon-Reyes has a

10  criminal history Category 1, and on the basis of my

11  investigation, he falls into that category.

12         THE COURT:  Okay.  Do you believe Mr. Rendon-

13  Reyes understands the sentencing guidelines operation in

14  his case?

15         MR. EPSTEIN:  Yes.

16         THE COURT:  And do you believe he understands

17  the mandatory minimum in his case?

18         MR. EPSTEIN:  Very well, your Honor.

19         THE COURT:  Okay.

20         All right.  So, Mr. Rendon-Reyes, do you

21  understand that the estimates provided to you are not

22  binding on the government, probation or the court?

23         THE DEFENDANT:  Yes, I understand, yes.

24         THE COURT:  Do you understand that if they're

25  estimate is wrong you will not be permitted to withdraw

39

Proceedings

1    your plea of guilty on that basis?

2              THE DEFENDANT:  Yes.

3              THE COURT:  Do you understand that your

4    ultimate sentence could turn out to be different from any

5    estimate your attorney or the government's attorney may

6    have given you?

7              THE DEFENDANT:  Yes, your Honor.

8              THE COURT:  Do you understand that it could

9    turn out that because of other statutory sentencing

10   factors, Judge Korman may impose a sentence that's even

11   higher than the one called for by the advisory sentencing

12   guidelines?

13             THE DEFENDANT:  Yes, your Honor.

14             THE COURT:  And if that turned out to be the

15   case, you would not be permitted to withdraw your guilty

16   plea, simply because no one could tell you in advance

17   what your sentence would be?

18             THE DEFENDANT:  Yes, your Honor.

19             THE COURT:  All right.  So far today, we've

20   discussed the plea guilty agreement globally and then

21   certain paragraphs in particular.  But let me ask, has

22   the entire agreement been read to you in Spanish?

23             THE DEFENDANT:  Yes, your Honor.

24             THE COURT:  And do you understand the entire

25   agreement?

40

Proceedings

1              THE DEFENDANT:  Yes, your Honor.

2              THE COURT:  And have you had a sufficient

3    opportunity to review the entire agreement which is

4    marked as Government Exhibit 7 with your attorney?

5              THE DEFENDANT:  Yes, your Honor.

6              THE COURT:  All right.  And do you want to go

7    ahead with your plea agreement with the government?

8              THE DEFENDANT:  Yes, your Honor.

9              THE COURT:  All right.  And I asked you this

10   before but I want to make sure the agreements under both

11   counts, it's -- it provides that you will be subject to

12   -- likely to be subject to the automatic removal from the

13   United States if you go ahead with the plea.  Do you

14   still want to go ahead with the plea despite that

15   consequence?

16             THE DEFENDANT:  Yes.

17             THE COURT:  All right.  Let me ask you a couple

18   of other things.  Let me tell you a few other things

19   first.

20             What's being proposed is you're going to plead

21   guilty to a felony.  And if your plea is accepted and

22   you're adjudged guilty of a felony, to the extent you

23   have certain rights in the United States, your

24   adjudication as guilty of those felonies may result in

25   your deprivation of those civil rights.  Do you

Proceedings

1    understand that?

2         THE DEFENDANT:  Yes, your Honor.

3         THE COURT:  All right.  I've gone over with you

4    many of the possible consequences to you if your plea of

5    guilty is accepted.  Do you understand all of these

6    possible consequences?

7         THE DEFENDANT:  Yes, your Honor.

8         THE COURT:  Did you review them with your

9    attorney?

10        THE DEFENDANT:  Yes, your Honor.

11        THE COURT:  And did you have a sufficient

12   opportunity to consult with your attorney about them?

13        THE DEFENDANT:  Yes, your Honor.

14        THE COURT:  All right.  I'm going to switch and

15   ask your lawyer some questions.  For the government, is

16   the government prepared to prove at trial all of the

17   elements of the counts against Mr. Rendon-Reyes?

18        MS. LEE:  Yes, your Honor.

19        THE COURT:  And those elements are set forth in

20   the statutes and element sheet that you provided to me

21   and to defense counsel, is that correct?

22        MS. LEE:  That's correct.

23        THE COURT:  And what evidence would the

24   government offer at trial to prove the defendant's guilt?

25        MS. LEE:  Through witness testimony, including

42

Proceedings

1   but not limited to the testimony of many of the victims

2   set forth in the superseding indictment, border crossing

3   records, money remitter records, wire tap records, and

4   other documentary records, the government would establish

5   that in or about and between December 2004 and November

6   2015, in Queens, New York and elsewhere, the  Rendon-

7   Reyes trafficking organization was a criminal

8   organization that operated in Queens, Atlanta, Alabama,

9   Mexico and other locations throughout the United States.

10          Members and associates of the Rendon-Reyes

11   trafficking organization engaged in various forms of

12   criminal activity, including but not limited to; sex

13   trafficking of women and minor girls, prostitution, alien

14   smuggling, alien harboring and money laundering.  That

15   this enterprise trafficked women from Mexico into the

16   United States and throughout the country, for the purpose

17   of prostitution and for their financial gain.  That the

18   defendant was a member of the Rendon-Reyes trafficking

19   organization, and that among other things, he committed

20   racketeering acts 4(a), and 9(a) of the indictment, which

21   are the sex trafficking of Jane Doe number 2 and number

22   7; and specifically with respect to those racketeering

23   acts, the government would prove that in or about and

24   between January 2006 and April 2007, the defendant, using

25   force, fraud and coercion, caused Jane Doe number 2 to be

43

Proceedings

1  brought from Mexico to the United States for the purposes
2  of prostitution.  And that in or about November 2007 and
3  December 2008, the defendant knew that force, fraud and
4  coercion had been used to cause Jane Doe Number 7 to be
5  brought from Mexico to the United States for the purposes
6  of prostitution and that he did facilitate and direct
7  some of her prostitution work in the United States.
8          THE COURT:  All right.  Counsel, do you agree
9  that the government would be able to prove Mr. Rendon-
10 Reyes guilt at trial based on the evidence just described
11 by the governement?
12         MR. EPSTEIN:  Yes.
13         THE COURT:  Do you know of any reason why
14 Mr. Rendon-Reyes should not plead guilty?
15         MR. EPSTEIN:  No.
16         THE COURT:  Are you aware of any viable legal
17 defense to the charges against him?
18         MR. EPSTEIN:  No.
19         THE COURT:  In your professional opinion, is
20 this plea in your client's best interest?
21         MR. EPSTEIN:  Yes.
22         THE COURT:  All right.
23         Mr. Rendon-Reyes, are you ready to plead at
24 this time?
25         THE DEFENDANT:  Yes.

44

Proceedings

1          THE COURT:  Do you need an opportunity to

2   consult with your attorney before you plea?

3          THE DEFENDANT:  No.

4          THE COURT:  Okay.

5          With regard to Count 1 of the superseding

6   indictment, how do you plead, "guilty" or "not guilty?"

7          THE DEFENDANT:  Yes, I'm guilty.

8          THE COURT:  With regard to Count 9 of the

9   superseding indictment, how do you plead, "guilty" or

10  "not guilty?"

11         THE DEFENDANT:  Yes, I'm guilty.

12         THE COURT:  All right.  As I said to you

13  earlier, I have to ask you, what it is that you did, such

14  that you are, in fact, guilty of Counts 1 and Count 9.

15         So in your own words, please tell me what you

16  did.

17         THE DEFENDANT:  I, Saul Rendon-Reyes, from

18  approximately March -- March of 2004 and June of 2014, I

19  was a member of an organization which in the indictment

20  is known as the Rendon-Reyes Organization of sex

21  trafficking.

22         I participated in the organization on the basis

23  of an agreement with others of the organization that I

24  would transport undocumented -- I would smuggle

25  undocumented folks to the United States for purposes of

45

Proceedings

1   prostitution.

2          I helped transport these women crossing state

3   lines so that the organization could profit from the work

4   of these women in Queens, New York and Alabama.

5          In particular, I influenced Jane Doe -- Jane

6   number 2 and Jane Doe number 3 to become prostitutes on

7   the basis of false promises.  I convinced them to work as

8   prostitutes at times when they did not want to do so.

9          THE COURT:  Okay.  Can I ask you some -- is it

10  Jane Doe number 3 or Jane Doe number 7?  I'm just --

11         THE DEFENDANT:  Two and three.

12         MR. EPSTEIN:  It was my mistake, your Honor.

13  It was 7.  We went over the indictment together, Jane Doe

14  number 2 and 7.

15         THE COURT:  Okay.  Do you have a copy of the

16  indictment?  You want to just look it over with your

17  client to make sure we're talking about the right person?

18         So, Mr. Rendon-Reyes, I would like to clarify

19  that we're talking about the right person.  You called

20  that person number 3, the record I have refers to that

21  person as number 7.  So why don't you just speak with

22  your lawyer about which person your speaking about.

23         MR. EPSTEIN:  That was my mistake.

24         THE COURT:  All right.  I'm sorry, so let's

25  just go back.  Mr. Rendon-Reyes spoke of Jane Doe number

46

Proceedings

1   2 and Jane Doe number 3.  Does he want to correct

2   something?

3          THE DEFENDANT:  Number 7.

4          THE COURT:  So instead of number 3, we're

5   talking about Jane Doe number 7, is that correct?

6          THE DEFENDANT:  Number 7.

7          THE COURT:  Okay.  May I ask, earlier in the

8   allocution, you -- the translation was "folks," was when

9   you were talking about smuggling, you said smuggling, I

10  think it was smuggling folks.  Was those the women in

11  prostitution?

12         THE DEFENDANT:  Yes, your Honor.

13         THE COURT:  Okay.  All right.  Just give me a

14  moment.

15         All right.  Counsel, is there anything else

16  you'd like your client to add to the record?

17         MR. EPSTEIN:   No.

18         THE COURT:  For the government, is that a

19  sufficient allocution?

20         MS. LEE:  It is, your Honor.

21         THE COURT:  All right.

22         Mr. Rendon-Reyes, a few more questions for you.

23         Are you pleading guilty to these two counts

24  voluntarily and of your own free will?

25         THE DEFENDANT:  Yes, your Honor.

47

Proceedings

1        THE COURT:  Has anyone threatened or forced you

2   to plead guilty?

3        THE DEFENDANT:  No, your Honor.

4        THE COURT:  Other than the promises contained

5   in Government Exhibit 7 which is the written plea

6   agreement that you've entered into with the government,

7   has anyone made any other promises to you to induce you

8   plead guilty?

9        THE DEFENDANT:  No, your Honor.

10        THE COURT:  Has anyone made any promise to you

11   as to what your final sentence will be?

12        THE DEFENDANT:  No, your Honor.

13        THE COURT:  All right.  Do you understand that

14   there's a mandatory minimum for one of the counts to

15   which you're pleading guilty?

16        THE DEFENDANT:  Yes, your Honor.

17        THE COURT:  Are you pleading guilty of your own

18   free will because, you are, in fact, guilty of Counts 1

19   and Count 9 of the superseding indictment?

20        THE DEFENDANT:  Count 1 and Count 7?

21        THE COURT:  Count 1 and Count 9.

22        THE DEFENDANT:  Yes, your Honor.

23        THE COURT:  All right.

24        Based on the information given to me here today

25   by counsel and by Mr. Rendon-Reyes, I believe he's fully

48

Proceedings

1  competent, that he's capable of entering an informed

2  plea, that he's acting voluntarily, that he's aware of

3  the nature of the charges against him, that he

4  understands his rights and Mr. Rendon-Reyes understands

5  the consequences of his plea.  I also believe there's a

6  factual basis for the plea supported by an independent

7  basis as to each of the elements of the offenses.

8          So I therefore recommend to district Judge

9  Korman that he accept the plea of guilty to Counts 1 and

10 Count 9 of the superseding indictment.

11          So, Mr. Rendon-Reyes, as earlier I mentioned,

12 that there would be a report prepared about you for Judge

13 Korman.  I'm going to ask your attorney, would you like

14 to participate in the interview?

15          MR. EPSTEIN:  Yes.

16          THE COURT:  All right.  We'll let probation

17 know that.

18          I assume that your client's going to continue

19 in custody, is that right?

20          MS. LEE:  That's correct, your Honor.

21          THE COURT:  There's no bail application, is

22 that right?

23          MR. EPSTEIN:  No.

24          THE COURT:  All right.  Are there any medical

25 issues that need attention?

49

Proceedings

1          MR. EPSTEIN:  No, your Honor.  My client has a
2   head cold now but I think that he'll adapt.
3          THE COURT:  All right.  Is there anything about
4   the cold that affected his ability to understand what's
5   going on here today?
6          MR. EPSTEIN:  Not at all.
7          THE COURT:  All right.  I'm going to return to
8   the government, Government Exhibit 7, which is the
9   original plea agreement and just again note for the
10  record it has an additional page, which is the trans --
11  includes the translators signature.
12         All right.  Is there anything else we should
13  cover here today?
14         MS. MERKL:  No, Judge.
15         MR. EPSTEIN:  No, your Honor.
16         THE COURT:  All right.  Thank you.
17         Feel better Mr. Rendon-Reyes.
18                  (Matter concluded)
19                      -o0o-
20
21
22
23
24
25

50

# C E R T I F I C A T E

I, ROSALIE LOMBARDI, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this 16th date of May, 2017.



Rosalie Lombardi
Transcription Plus II